David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn W. Miller, Esq.
Nevada Bar No. 7825
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com
smiller@hainesandkrieger.com

*Attorneys for Plaintiff,*
*RICHARD SALAZAR*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD SALAZAR,<br><br>Plaintiff,<br><br>vs.<br><br>ABC AUTOMOTIVE INVESTMENTS, LLC, D/B/A LAS VEGAS MITSUBISHI,<br><br>Defendants. | Case No.: 2:19-cv-00039-RFB-PAL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |

RICHARD SALAZAR ("Plaintiff"), by and through his counsel, hereby files this opposition ("Response") to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) (the "Motion"). Plaintiff's Response is based upon the accompanying Memorandum of Points and Authorities, the papers and pleading on file in this action, and any oral argument the Court may allow.

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

As alleged in the Complaint, Plaintiff went to ABC AUTOMOTIVE INVESTMENTS, LLC D/B/A LAS VEGAS MITSUBISHI ("Defendant" or "LVM") to purchase an automobile. Plaintiff took a loan pre-approval letter with him to LVM and instructed LVM not to pull his credit because he was in the process of obtaining a real estate loan and even one hard credit pull would jeopardize his loan rate. LVM agreed not to pull Plaintiff's credit report, and there was no legitimate purpose to pull Plaintiff's credit report since he was pre-approved. Despite its representation, LVM impermissibly pulled Plaintiff's credit report three times while Plaintiff was at LVM. This was a blatant invasion into Plaintiff's private and sensitive personal information and a violation of Plaintiff's legally protected interest under the Fair Credit Reporting Act (FCRA). LVM's illegitimate credit pulls caused Plaintiff's credit score to drop resulting in higher interest rates an auto loan and leaving Plaintiff traumatized and emotionally distressed over whether his real estate loan would be approved. *See* Complaint.

LVM's Motion seeks to dismiss the Complaint, contending that invasion of privacy and drop in credit score are not "concrete" harms. LVM's Motion relies heavily on *Spokeo* to provide the legal standard and analysis the Court should

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

utilize to determine whether Plaintiff has alleged a concrete injury in fact. However, after discussing the legal requirements illuminated in Spokeo, LVM all but ignores the *Spokeo* analysis and resorts to conclusory statements that "Plaintiff has failed to plead a 'concrete' harm." Motion, p. 8.

However, the allegations in the Complaint reveal show real and concrete injury in this case. As a result of LVM's conduct, Plaintiff suffered shock, anger, frustration, concern, fear that the unauthorized credit inquiries would have a significant effect on his loans, emotional distress, mental anguish, humiliation, anxiety, lost sleep, lost appetite, a decrease of his FICO score by at least 8 points causing the interest rate on his loan to increase from 5.74% to 8.99%, damage to his creditworthiness while actively seeking credit which LVM has failed to fix, and other substantial distress. Complaint, ¶¶ 15, 20, 30-31, 42-45. These are not some imaginary, speculative injuries. These are actual injuries and damages Plaintiff suffered as a result of LVM's actions. Accordingly, the Motion should be denied.

## II

## BACKGROUND

On December 1, 2018, Plaintiff visited LVM's retail business to purchase a vehicle. Complaint, ¶ 4. Plaintiff informed LVM not to pull his credit because he was in the process of getting a home loan as well and needed to keep his credit score as high as possible. Complaint, ¶ 14. There was no reason for LVM to pull

Plaintiff's credit because Plaintiff had brought an automobile pre-approval letter from America First Credit Union. Complaint, ¶¶ 13, 16, 26-29. Plaintiff was very adamant and deliberate in demanding that LVM not complete a "hard pull" credit inquiry. Complaint, ¶¶ 13, 15. LVM was informed and knew that any hard inquiry would lower his credit score, which in turn would cause him to lose his locked-in low mortgage rate. Complaint, ¶ 15. LVM specifically agreed not to conduct a "hard pull" and wrote "DO NOT RUN CREDIT" on the top of Plaintiff's application. Complaint, ¶ 13.

Despite having actual knowledge of the damage and injury Plaintiff would suffer if LVM conducted a hard credit inquiry, and after having agreed not to pull Plaintiff's credit, LVM conducted three (3) hard credit inquiries on Plaintiff's credit while Plaintiff was negotiating the purchase of a vehicle. Complaint, ¶¶ 19, 21, and 24. LVM's unauthorized credit pulls was willfully and intentionally invaded Plaintiff's privacy, accessing Plaintiff's sensitive personal information without consent or purpose. Complaint, ¶¶ 30-32, 38-39. Once Plaintiff discovered LVM's egregious conduct, Plaintiff was outraged, leaving him furious and in shock. Complaint, ¶ 30. Not only was Plaintiff angry, Plaintiff was emotionally distressed that the interest rate on his loan would rise, as a result of LVM's illegal conduct, Plaintiff suffered emotional distress, mental anguish, humiliation, anger, anxiety, lost sleep and lost appetite. Complaint ¶¶ 42, 45.

Furthermore, just as Plaintiff had warned LVM would happen, LVM's impermissible pull of Plaintiff's credit caused Plaintiff's credit score to drop at least 8 points, resulting in an increase to his auto loan from 5.74% to 8.99%. Complaint, ¶¶ 43-44. LVM knew its conduct was egregious, and even acknowledged to Plaintiff that it improperly pulled Plaintiff's credit report, but by then it was too late, the damage had already been done. Complaint, ¶¶ 23-24, 44.

This is not a case where Plaintiff's injuries are hypothetical, conjectural or abstract injuries. LVM illegally invaded Plaintiff's personal and protected information without authorization or legitimate purpose; LVM caused Plaintiff to be emotionally and mentally distressed, resulting in actual symptoms and damage; and LVM caused Plaintiff's credit score to drop, resulting in an actual increase in the interest rate on his loan. These are real, concrete injuries. Accordingly, the Motion should be denied.

## II

## LEGAL ANAYLSIS

**A.  Legal Standard for Motion to Dismiss.**

The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) is rigorous and "dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Trustees of Nev. Resort Ass'n Int'l Alliance v. Encore Productions, Inc.*, 742

F. Supp. 2d 1132, 1134 (D. Nev. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff." *Id.* (citing *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986)); *See also*, *Prince v. U.S. Bancorp*, 2010 U.S. Dist. LEXIS 91491, 2010 WL 3385396 (D. Nev. Aug. 25, 2010) (citations omitted).

In order to avoid a motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). This standard does not require "detailed factual allegations." *Id.* "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *March v. Pinnacle Mortg. of Nevada, LLC*, 2011 WL 4809198 (D. Nev. 2011). "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In this case, a fair reading of the allegations in the Complaint reveals sufficient factual content that supports a plausible claim against LVM for its

impermissible pull of Plaintiff's credit report without a legitimate purpose or consent in violation of FCRA 15 U.S.C. § 1681b. Additionally, when viewed in the light most favorable to Plaintiff, the Complaint alleges damages and injury that are actual, real and concrete to the Plaintiff, satisfying the "injury" element of standing.

### B. LVM's Invasion into Plaintiff's Sensitive Personal Information Without Authorization or Legitimate Purpose Constitutes a Concrete Injury that Confers Standing.

LVM has sought to dismiss the Complaint on the grounds that "invasion of privacy with no concrete injury does not create standing." Motion at 8. LVM looks primarily to *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 194 L. Ed. 2d 635 (2016) as the legal framework used to support this argument. Plaintiff does not dispute the analysis of *Spokeo*. In fact, Plaintiff agrees that in order to have standing, Plaintiff must allege an injury in fact or a violation of "'a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo* 136 S.Ct. at 1543, 1547-48 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *See also*, Motion, p. 6-7.

However, there are a few guiding principles in *Spokeo* that LVM glossed over. In *Spokeo*, the Supreme Court specifically stated that the injury does not need to be "tangible", making it clear that intangible harms or injury (e.g. violation

of free speech or free exercise) can also be "concrete." *Id*. at 1549. Additionally, the Supreme Court recognized that Congress may "identify intangible harms that meet minimum Article III requirements" and may elevate those harms "to the status of legally cognizable . . . [and] concrete, *de facto* injuries that were previously inadequate in law." *Id.* (citing *Lujan,* 504 U.S. at 578). In short, Congress can "give rise to a case or controversy where none existed before." *Id.* The Supreme Court did caution that just a bare statutory violation, without any connection to an injury, would fail to satisfy the concrete element of standing. But even then, the Supreme Court was quick to add that "this does not mean, however, that the <u>risk</u> of real harm cannot satisfy the requirement of concreteness" and that in some cases "a plaintiff need not allege any additional harm beyond the one Congress has identified." *Id.*

The facts in *Spokeo* involved a website that provided information about individuals including marital status, age, occupation, photos, and economic and wealth status. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). In *Spokeo*, the plaintiff asserted that the website contained inaccurate information, reporting that the plaintiff was more educated, more wealthy, and more stable than he actual was. *Id.* The plaintiff alleged that this violated various requirements of the FCRA, including failing to follow reasonable procedures to assure maximum possible accuracy of reported information. *Id.* The plaintiff

alleged that the inaccuracies and errors harmed his employment prospects and caused him emotional distress. *Id.* The issue was whether a concrete injury existed. The Supreme Court held that the Ninth Circuit failed to address the concreteness standard and remanded the case to the Ninth Circuit to consider whether plaintiff's alleged injuries meet the "concrete" requirement. *Id.*

On remand, the Ninth Circuit was required to consider "the extent to which a violation of a statutory right can itself establish an injury sufficiently concrete for the purposes of Article III Standing." *Robins v. Spokeo, Inc.* 867 F.3d 1108, 1112 (2017). The Ninth Circuit adopted the reasoning of the Second Circuit, that "an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interest and where the procedural violation presents a risk of real harm to the concrete interest." *Id.* at 1113 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)). Based on this framework the Ninth Circuit analyzed "(1) whether the statutory provisions at issue were established to protect [Plaintiff's] concrete interest (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged . . . actually harm, or present a material risk of harm to, such interests." *Id.*

With regard to prong one (whether the staute was established to protect a concrete interest), the Ninth Circuit in *Spokeo* found that the FCRA was

specifically "crafted to protect consumers from the transmission of inaccurate information" and that the FRCA provisions that require reasonable procedures to ensure maximum accuracy were established to specifically protect that concrete interest. *Id.*  In reaching this determination, the Ninth Circuit highlighted two primary purposes of the FCRA: "'to ensure fair and accurate credit reporting' and to 'protect consumer privacy.'" *Id* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)).  Thus, the Ninth Circuit held that the interest of accurate information was a real, concrete protected interest under the FCRA, not just a procedural right or legal creation.  *Robins v. Spokeo, Inc.* 867 F.3d at 1114.

Using that same analysis in this case, there is little doubt that the privacy of consumer credit data is a real, concrete protected interest under the FCRA, not just a procedural right.  Congress established the FRCA to protect a consumer's concrete interest in consumer privacy.  15 U.S.C. § 1681(b).  As cited above, one of the central aims of the FCRA is to protect and preserve "consumer privacy" interests.  To achieve this aim, the FCRA has imposed "a host of procedural requirements concerning the creation and use of consumer reports and . . . allows individual to sue those which are non-compliant." *Id.*  15 U.S.C. § 1681b is the cornerstone of these protected privacy interests and only allows a consumer report for specific purposes (not applicable here) "and no other."  15 U.S.C. § 1681b(a).

"A person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report . . . is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e." 15 U.S.C. § 1681b(f).

Protecting privacy as a concrete harm is nothing new. Not only did Congress identify this privacy harm as an injury the FCRA sought to remedy, but an invasion of privacy is also a quintessential "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. For more than a century, American courts have recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." Restatement (Second) of Torts § 652A (1977); *see id*. There can be no doubt that harms to an individual's privacy have traditionally been regarded as a cognizable basis for suit. As stated by the Ninth Circuit, "[T]he interests that FCRA protects also resemble other reputational and privacy interest that have long been protected in the law." *Robins v. Spokeo, Inc.* 867 F.3d at 1114. Accordingly, prong one of this analysis has been satisfied in this case.

Prong two—whether the specific procedural violations alleged by Plaintiff actually harmed or present a material risk of harm to such protected interests—is also satisfied in this case. In *Spokeo*, the plaintiff alleged that the inaccurate information caused "harm to his employment prospects" and that he suffers from

"anxiety, stress, concern, and/or worry about his diminished employment prospects."  Although the Ninth Circuit observed that not every "trivial or meaningless" violation could cause a material risk of harm, the Ninth Circuit found that these allegations did because the inaccuracies related to information that would be relevant to prospective employers.  *Robins v. Spokeo, Inc.* 867 F.3d at 1117.  Significantly, the Ninth Circuit did not require a showing or allegation that the plaintiff actually had been denied employment as a result of the inaccurate reporting.  The defendant in *Spokeo* argued that plaintiff's allegations of harm were too speculative to establish a concrete injury and that at best, the "seemingly flattering but incorrect information" might hurt his potential employment prospects but do not pose a material or impending risk of doing so.  *Robins v. Spokeo, Inc.* 867 F.3d at 1117-1118.  The Ninth Circuit rejected this reasoning stating that the concrete injury was the intangible injury caused by the inaccurate report.  *Id.*  "In the context of FCRA, the alleged intangible injury is itself sufficiently concrete.  It is of no consequence how likely [plaintiff] is to suffer additional concrete harm as well (such as the loss of a specific job opportunity)." *Id*.

Using that same analysis in this case, there is little doubt that LVM's unauthorized pulling of credit reports has injured Plaintiff by intruding into Plaintiff's privacy in a manner that poses actual harm or presents a material risk of harm that is real and concrete.  Invading a consumer's privacy is not a trivial or

meaningless breach, but goes to the center of what the FCRA was designed to protect. In *Spokeo*, the Ninth Circuit approvingly cited *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-41 (3d. Cir. 2017), which held that an "unauthorized disclosure in violation of FCRA's privacy protections is a concrete harm." *Id*. at 1114-1115. As specifically stated in *Horizon Healthcare*, "[s]o the plaintiffs here do not allege a mere technical or procedural violation of FCRA. They allege instead the unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent." 846, F.3d 625, 640 (2017). That is the same analysis that should be applied in this case. Protecting privacy is one of the main reasons for the FCRA. LVM's invasion into Plaintiff's confidential and sensitive personal information constitutes the very intangible injury the FCRA intended to protect. LVM's unauthorized intrusion and invasion into Plaintiff's protected privacy interest and the material risk of unauthorized dissemination by LVM is a real, concrete injury that the FCRA was designed to protect against. It is of no consequence how likely it is that Plaintiff may suffer identity theft or additional harm, the unauthorized intrusion into Plaintiff's protected privacy interest is the very injury that FCRA is intended to prevent. Just because Plaintiff's injury is intangible does not make it any less concrete. Accordingly, prong two of the analysis has been satisfied in this case.

Defendant cites to *Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776 (9th Cir. 2018) hoping to convince this Court that "invasion of privacy with no concrete injury does not create standing." But this case is distinguishable. In *Bassett,* the issue was whether failing to truncate a credit card's expiration date on a receipt was sufficient to confer Article III standing. Significantly, in the Clarification Act, Congress itself specifically deemphasized the significance of expiration dates, stressing that truncating the card number was sufficient. *Bassett*, 883 F.3d at 781-82. In other words, Congress found that disclosure of a credit card's expiration date by itself poses minimal risk. *Id.* Unlike *Bassett,* Congress has not deemphasized the privacy of consumer credit information and data. Additionally, *Bassett* is distinguishable because it dealt with a single, discrete, disclosure of a credit card expiration date. In this case, LVM illegally accessed Plaintiff's entire credit report, three times, exposing all of Plaintiff's confidential and private consumer data. *Bassett* is just not persuasive or helpful in this case.

LVM's Motion devotes a lot of time to discussing the requirements of Article III standing, but provides very limited analysis on why an unauthorized breach into Plaintiff's privacy and highly confidential information is not a concrete injury. Motion, 8. Other than a conclusory statement that "Plaintiff has failed to pled a concrete harm" and citing to the distinguishable *Bassett* case, the Motion is silent on this issue. It appears LVM has mistakenly assumed that only tangible

injuries give rise to standing. However, as discussed above, an intangible harm like invasion of privacy is a real, concrete injury that is sufficient to confer standing. Congress has long protected credit data and had deemed such information should remain private, and any illicit intrusion into such privacy can and should be redressed. Accordingly, the Motion should be denied.

### C. Even if Plaintiff's Right to Privacy is not "Concrete", Plaintiff has Alleged Other Injuries that are Concrete.

For the sake of argument, even if Plaintiff's injury for unauthorized invasion of his privacy by LVM is not concrete, Plaintiff has alleged additional concrete, actual, real damages in this Case. As discussed above, as a result of LVM's conduct, Plaintiff suffered shock, anger, frustration, concern, fear that the unauthorized credit inquiries would have a significant effect on his loans, emotional distress, mental anguish, humiliation, anxiety, lost sleep, lost appetite, a decrease of his FICO score by at least 8 points causing the interest rate on his loan to increase from 5.74% to 8.99%, damage to his creditworthiness while actively seeking credit which LVM has failed to fix, and other sever distress. Complaint, ¶¶ 15, 20, 30-31, 42-45. These are not some imaginary, speculative injuries. These are actual injuries and damages Plaintiff suffered as a result of LVM's actions. Not surprisingly, LVM does not even discuss the shock, anger, frustration, concern, fear of the negative affect on his loans, emotional distress, mental

anguish, humiliation, anxiety, lost sleep, lost appetite, and creditworthiness damage in the Motion at all. On this basis alone, the Motion should be denied.

LVM did attempt to discuss the 8 point FICO score drop Plaintiff suffered as a result of LVM's unauthorized credit pulls. LVM seems to suggest that an 8 point drop on a FICO score (which has a range of 300 to 850) is only .9%, as if that analysis has any relevance in determining whether an injury is concrete under the *Spokeo* analysis. It does not. As discussed above, the test is whether a concrete injury exists, not the magnitude of the concrete injury. It is worth noting that the .9% drop in FICO score that LVM is so quick to discount resulted in an increase in Plaintiff auto loan from 5.74% to 8.99%. That is a significant 63.8% increase in the interest rate on Plaintiff's auto loan. An 8 point drop in FICO score is not as insignificant as Defendant has tried to make it seem in this case, particularly considering LVM was notified that "*any decrease*" would result in damage to the Plaintiff.

Additionally, Defendant's citation to outside evidence and websites to support its argument is inappropriate at this stage of the litigation. Motion, p. 8, footnote 1. A motion to dismiss is to test the sufficiency of the allegations in the Complaint, not to make a final adjudication of the issues. For the same reason, LVM's argument that the letter LVM gave to Plaintiff "could easily be provided to any mortgage underwriter" is also beyond the scope of a motion to dismiss.

Whether Plaintiff could mitigate damages does not speak to the issue of whether Plaintiff's injuries are actual and concrete. But the fact that LVM states that mitigation is possible highlights the fact that the injury sustained by Plaintiff was actual and real or presents a risk of real harm to Plaintiff's concrete interest.

## IV

## CONCLUSION

For the foregoing reasons, it is respectfully requested that LVM's Motion to Dismiss be denied.

Dated: February 20, 2019

/s/Shawn W. Miller
Shawn Miller, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Counsel for Plaintiff

## CERTIFICATE OF MAILING

I hereby certify that on February 20, 2019, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** was served on counsel of record via email through the Court's electronic filing system as follows:

> Via Email:  janet.pancoast@zurichna.com
> Janet C. Pancoast, Esq.
> CISNEROS & MARIAS
> 7450 Arroyo Crossing, Suite 230
> Las Vegas, NV 89113

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123